RAMÓN VALCOURT QUESTEL, Plaintiff and Appellant, v. JOSÉ ALFREDO IGLESIAS DE LA CRUZ ET AL., Defendants and Appellees.

No. 11152. Argued May 3, 1954.—Decided August 31, 1955.

Antonio J. Amadeo for appellant. Miranda Esteve & Martínez Álvarez for appellees.

## JUDGMENT

The appeal taken from the judgment rendered by the San Juan Part of the Superior Court under date of December 29, 1952, in the above-entitled case, is dismissed for lack of jurisdiction.

---

It was so decreed and ordered by the Court as witness the signature of the Chief Justice. Mr. Justice Belaval delivered a separate opinion.

A. C. SNYDER,

Chief Justice

I attest:

IGNACIO RIVERA,

Secretary

Separate opinion of MR. JUSTICE BELAVAL.

In this case our Court has refused jurisdiction on the ground that it should have come to us by way of certiorari and not by appeal. This is not the proper time to make an exegesis of a dogmatic legalism before which the spirit of a whole reformation may fail. I believe the Court is mistaken and that this case is altogether different from those so far decided on the matter, for the following reasons:

This case originated in the former Municipal Court of San Juan wherein a complaint was filed on May 24, 1945. The Municipal Court rendered judgment on April 24, 1946, and an appeal was taken on April 30, 1946 to the former District Court of San Juan. Therefore, the case was pend-

---

ing in the former District Court of San Juan at the time of enactment of Act No. 432 of May 15, 1950 (Sess. Laws, p. 1126)—An Act to establish the Organic Act of the Judiciary of Puerto Rico.

The section applicable to pending actions is § 38 of Act No. 432 of May 15, 1950, which provides as follows:

"Section 38.—Actions Pending.—All civil and criminal actions, *proceedings, remedies,* cases and matters of whatever nature which on the date this Act takes effect have been filed or are pending in the justice of the peace courts, in the municipal courts, including the Municipal Tribunal of the Capital, in the district courts, including the Tribunal of the Judicial District of San Juan, in the Juvenile Court or in the Supplies Appeal Court, which are hereby abolished, shall continue to be prosecuted in the corresponding section or district of the Justice of the Peace Court, Municipal Court or District Court of Puerto Rico, the Minors' Guardianship Court or the Supplies Appeal Court, as the case may be, upon which and to the judges of which sections and districts express jurisdiction is hereby conferred to take cognizance and to continue taking cognizance of such actions, proceedings, cases, remedies, and matters up to their final decision according to the legislation in force at the time of the filing thereof."

It will be seen that as to pending matters, Act No. 432 established the principle that those matters which were pending should continue to be prosecuted up to their final decision *according to the legislation in force at the time of the filing thereof,* namely, in the instant case, the legislation in force on May 24, 1945.

The judgment of the Superior Court was rendered on December 29, 1952, and timely appealed to this Court, after reconsideration was denied, on February 13, 1953, or after the enactment of Act No. 11 of July 24, 1952 (Spec. Sess. Laws, p. 30)—the Judiciary Act of the Commonwealth of Puerto Rico.

Section 14 of Act No. 11 of July 24, 1952, provides that: "final judgments, and other orders of the Superior Court

from which heretofore an appeal might have been taken from the District Court, may be appealed to the Supreme Court under the terms and conditions established by law and in accordance with the rules of procedure established by the Supreme Court . . . ."

Since the judgments rendered by the former district courts on appeal from the former municipal courts were appealable to this Court, provided the amount involved was over $300, I believe we have jurisdiction to decide this case.

But even if we apply the doubtful method of the so-called judicial intuition, perhaps this appeal should have been treated as a petition for certiorari, since the decision thereof by the trial court rested entirely on a question of law. Believing as I do that the Court has power to decide this case one way or the other, I would be failing my judicial duty if I did not examine the merits of the question at issue. Let us see.

On January 9, 1924, Adriana de la Cruz widow of Iglesias executed a mortgage in favor of Ángela Figueroa Reyes for the deferred price of $428, which she promised to pay "within a period of four years counted from the 15th day of the present month, at the domicile of the creditor, paying interest, *while this debt is outstanding*, at 9 per cent per annum, in monthly installments." The purpose of the mortgage was "to secure the payment of the deferred price, *interest thereon* and an additional credit of $150 for costs, expenses, and attorney's fees."

Adriana de la Cruz widow of Iglesias paid interest on the mortgage up to November 30, 1930, but did not pay the principal. After November 30, 1930, she also ceased to pay interest on the mortgage. On February 5, 1945, mortgagee Ángela Figueroa Reyes assigned the mortgage credit and the unpaid interest to plaintiff-appellant.

On April 19, 1945, Ramón Valcourt Questel filed in the former District Court of San Juan a mortgage foreclosure

proceeding against the defendants-appellees as heirs of Adriana de la Cruz widow of Iglesias, claiming the following amounts:

| | |
|---|---:|
| Principal of the loan | $428.00 |
| Taxes paid | 622.16 |
| Credit for costs | 150.00 |
| | $1,200.16 |

It is to be noted that no claim for interest was made in the mortgage foreclosure proceeding.

The reason alleged by appellant for not claiming interest was that it was not secured by the mortgage. He therefore filed another action of debt in the former Municipal Court of San Juan claiming legal interest from November 1, 1930, to April 30, 1945, totalling $370.12, plus the costs and expenses of the action. The former Municipal Court of San Juan rendered judgment for plaintiff-appellant. On appeal to the former District Court of San Juan, the defendants-appellees filed a motion for summary judgment together with the record of the mortgage foreclosure proceeding, alleging that the deed of mortgage, the foreclosure of which was followed through until termination of the mortgage foreclosure proceeding, secured the interest accrued on the loan, and that such interest was voluntarily excluded from the proceeding by plaintiff-appellant.

On December 29, 1952, the San Juan Part of the Superior Court of Puerto Rico, successor of the San Juan Section of the former District Court of Puerto Rico and of the former District Court of San Juan, rendered judgment granting the motion for summary judgment. The trial court, applying the case of *Díaz* v. *Quiñones*, 68 P.R.R. 232, 240 (De Jesús) (1948), held that plaintiff-appellant "was entitled to receive, by virtue of the mortgage acquired by him, the interest agreed upon by the parties which was

secured by mortgage, there being no limitation as to the amount of such interest, *since when there are no third parties* all interest accrued is recoverable against the original debtor, and, consequently, it could and should have been included in the summary proceeding."

The trial court was correct in deciding the case the way it did. The purpose of the mortgage was to secure, in addition to the principal and the additional credit, interest at 9 per cent per annum *while the debt was outstanding*. But even if it did not say so, interest on a credit is not extinguished by the maturity of the debt in the absence of third persons. Nor is it necessary to specify numerically the amount of the mortgage security as to interest. We note, however, certain discrepancies in our decisions on the matter which compel us to re-examine the question.

In *Altuna* v. *Ortiz et al.*, 12 P.R.R. 318, 328–29 (Quiñones) (1907), in construing § 147 of the Mortgage Law of 1893 for the Colonial Provinces, we laid down the rule that if there are no third persons the mortgagee may recover from the mortgaged property the payment of the interest accrued after the maturity of the mortgage until the principal is fully paid. If there are third persons, namely, subsequent purchasers or mortgagees who might have purchased or obtained a mortgage credit appearing in the records of the Registry of Property, there may be collected, to the prejudice of a third person, only the interest for the last two years and the part due for the current year. That ruling was in harmony with the best mortgage doctrine. But it could not last long.

The case which evidently has created confusion is that of *Goico* v. *Rodríguez et al.*, 28 P.R.R. 492, 495–97 (Hutchison) (1920). In the first place, the writer of that opinion, instead of applying § 114 of the Mortgage Law of Puerto Rico, applied a judgment of the Supreme Court of the United States, copied from 15 R.C.L. 22, which provides:

· "It is well settled that the conventional rate of interest will be allowed after maturity where there is a stipulation to this effect, and it has also frequently been held that such rate may be allowed even in the absence of express agreement to that effect where from the terms of the obligation itself when properly construed it is plainly manifest that this was the intention of the parties, as for instance in the case of a note payable one day after date, or a note payable on demand, with conventional interest. Where, however, there is no indication of the intention of the parties to the contract and the question is not settled by statutory enactment, there is a conflict of authority as to whether the conventional or legal rate will be allowed after maturity. According to one line of decisions the conventional rate of interest will continue after maturity as before, in the absence of any stipulation of the parties. On the other hand the courts in a number of the states hold that under such circumstances the legal rate of interest and not the conventional rate will be allowed after maturity. This is the rule usually applied by the United States Supreme Court, but that tribunal has held *that the question is always one of local law,* and that where a different rule has been established it governs in that locality. There is much soundness in the position that where the contract is silent as to the rate of interest after maturity, the legal rate should be allowed. Those who maintain the opposite view hold it to be a presumption of the parties that the rate stipulated before should continue after maturity; but this is opposed to the rule that after a failure to pay, interest is then given not according to contract, but in the nature of damages, and then the rule of damages, the legal rate of interest, should govern." (Italics ours.)

As respects the local law, he applied § § 1067, 1068, 1075, 1076, and 1141 of the Civil Code of Puerto Rico of 1902 (1911 ed.) dealing with default, which are the equivalent of § § 1053, 1054, 1061, 1062 in part, and 1127 of the Civil Code of Puerto Rico (1930 ed.), which provide:

"Section 1053.—*Persons obliged* to deliver or to do something *are in default from the moment when the creditor demands the fulfilment* of their obligation, *judicially or extrajudicially.*

"However, the demand of the creditor, in order that default may exist, shall not be necessary:

"1. If the obligation or law declares it expressly.

"2. If by reason of its nature and circumstances it may appear that the fixing of the period within which the thing was to be delivered or the service rendered was a determinate cause to constitute the obligation.

"In mutual obligations none of the persons bound shall incur default if the other does not fulfill or does not submit to properly fulfill what is incumbent upon him. From the time one of the persons obligated fulfills his obligation the default begins for the other party.

"Section 1054.—Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby.

"Section 1061.—Should the obligation consist in the payment of a sum of money, and the debtor should be in default, the indemnity for losses and damages, should there not be a stipulation to the contrary, shall consist in the payment of the interest agreed upon, and should there be no agreement, in that of the legal interest.

"Until another rate is fixed by the Government, interest at the rate of six per cent per annum shall be considered as legal.

"Section 1062.—Interest due shall earn legal interest from the time it is judicially demanded, even if the obligation should have been silent on this point.

"In commercial transactions the provisions of the Code of Commerce shall be observed.

"Section 1127.—If the debt bears interest the payment cannot be considered as made on account of the principal until the interest is covered."

In the light of these sections and the citation previously transcribed, Mr. Justice Hutchison concluded that when a mortgage obligation bearing interest is silent as to the rate of interest to be paid by the debtor after maturity, the creditor cannot collect more than the legal rate. This holding is altogether incorrect for two main reasons: (1) the writer concluded that the maturity of the obligation brought

about automatically a special state of default, and made no distinction between mere delay (*mora inculpata*) or tardiness without default and actual default; (2) instead of applying the special statute relating to mortgages, he applied the general statute relating to obligations.

1. In the absence of an express stipulation by the parties, the maturity of the obligation does not produce default but mere delay or tardiness without default. Commenting on § 1100 of the Spanish Civil Code, which is equivalent to § 1053 of our Civil Code, says Scaevola: " . . . In this matter, the authorities are agreed on one point, not to consider the maturity date sufficient by itself to bring about the default of the debtor . . . The delay in performance commences from the day the obligation matures. But if for some reason the creditor has shown tolerance to the debtor, or if tolerance is presumed from facts or good legal reasons, there is mere delay but not default." 19 Scaevola, *Código Civil*, 454, 451 (1902 ed. of the *Legislación Española*).

Commenting on the same section, Manresa says: " . . . default presupposes the idea of delay or tardiness in the performance of obligations; in short, the nonperformance of the latter in the aspect of time. It is to be noted, and it has theoretical and practical importance, that *the fact of the default is distinguishable from mere delay*, because the commencement of a special state of delay is presupposed by the most solemn and authentic statement, so to speak, that default has commenced and together with it the inherent effects of the delay are felt. *It is therefore necessary to determine when the default begins*, and, according to the source of such declaration, it is proper to distinguish it from the agreement or claim of the debtor." 8 Manresa, *Comentarios al Código Civil Español*, 125 (1950 ed. by Instituto Editorial Reus.)

In his treatise *Derecho Civil Español, Común y Foral*, Castán defines default as culpable delay: " . . . In a broad

sense, by default or delay is meant the tardiness in the performance of the obligation. But in a proper and juridical sense *default is only* culpable delay . . ." Castán, 3 *Derecho Civil Español, Común y Foral*, 140 (1954 ed. of the Instituto Editorial Reus).

When does delay or tardiness without default become a default? When the creditor, either judicially or extrajudicially, demands the performance of his obligation, says § 1053 of our Code. While the creditor does not take this affirmative action, the debtor is covered by the presumption of tolerance on the part of the creditor. 19 Scaevola, 451, last par. (*op. cit.*); 3 Castán 142 (*op. cit.*) There is no question as to when mere delay becomes a default in the event of judicial demand. Default begins to run with the filing of the complaint in the case of liquid and demandable amounts, or from the time judgment is rendered in the case of unliquidated or undetermined amounts, which must be determined by the trial court. 3 Castán 141 (*op. cit.*)

A doubt may arise where the default commences in extrajudicial actions. Not every extrajudicial action of the creditor results in a special state of default, from which accrues the indemnity due the creditor, and in case of pecuniary obligations, the interest representing the compensatory damages. The commentators are not agreed as to the manner in which the notice or request must be made on the debtor. But all are agreed that it should be more than a mere step to collect. In his comments on the theory of Enneccerus, Castán refers to the remittance of the bill with a return receipt or a demand for payment, but accepts Valverde's advice that "a particular simple reminder or an act which cannot be labelled a demand for performance would not be a request, since what the Code requires is a showing that the creditor's tolerance or benevolence has come to an end." 3 Castán, 142 (*op. cit.*) Puig Peña, after considering sufficient the remittance of the bill with a return receipt, or a

letter, a telegram, or even a simple verbal request, advises: "It will also be necessary to bear in mind, however, that the purpose of the request partakes of the nature of a declaration of the will to receive, and, therefore, default does not commence until such a declaration becomes known to the debtor. That is why in practice the notarial request is the most common, since it is expressly set forth in an authentic document that the debtor is aware that the creditor has changed his mind." IV-I Puig Peña, *Tratado de Derecho Civil Español*, 226–27 (1951 ed. by Revista de Derecho Privado).

As has been seen, the debtor's default cannot be made to depend on the time the obligation matures. Accepting nowadays not only the debtor's default but even the creditor's own default, the waiver of default by an implied extension agreement between the debtor and the creditor, the concurrence of defaults and even the remission of default after notice is given, it is difficult, if not impossible, to determine, even in monetary obligations, the fault of the debtor as a basis for his default by the mere lapse of the period of nonperformance.

The importance of this distinction between mere delay and default is that the debtor does not suffer the consequences of the default when he is in arrears for some good cause. 2 Giorgi, *Teoría de las Obligaciones*, 86 (1928 ed. by Editorial Reus.) Puig Peña is of the opinion that he should, although he calls attention to the judgment of the Supreme Court of Spain holding otherwise. "The delay without default being an improper nonperformance as affecting merely the time of payment, it should not lead to consequences other than the indemnity for exemplary damages. According to a Judgment of the Supreme Court (May 21, 1904), *not even that*, for § 1101 [section 1054 of the Civil Code of Puerto Rico] is subordinated to the actual existence of default, and, therefore, compensation will not lie if there

is no default. This holding of the Supreme Court is supported by some sector of the doctrine . . . We believe, however, that this criterion is not altogether a wise one. In the first place, the fact that the creditor does not interpellate does not mean that he acquiesces; there may be impossibility or mere expectancy in a desire to avoid a greater harm. In the second place, there is no question that there is nonperformance and that it may cause damages, and there is no moral or legal reason barring a claim to proper compensation. Moreover, even from a legal point of view, there is no bar to this theory, for § 1101 cited in the judgment referred to does not speak of 'default' but of 'delay', which terms should not have the same connotation if they are correctly interpreted." IV-I Puig Peña, *Tratado de Derecho Civil Español*, 221–22 (ed. cit.). (Brackets ours.) The words of the learned commentator are wise, as to their fair implications, when applied to the apparent default of the debtor, but they are not so wise when contrasted with the possible default of the creditor. In any event, it may be generally affirmed that not every nonperformance of an obligation is the debtor's fault, and that the most feasible way of discovering the reasons for nonperformance is not to presume them beforehand but to wait for the corresponding proof before its judicial adjudication. See, also, II-I Enneccerus-Lehmann, *Derecho de Obligaciones*, 261–63 (1933 ed. by Librería Bosh of Barcelona).

2. The other evident error committed by us in the decision of the *Goico* case was to apply the provisions of § 1053 *et seq.* of the Civil Code, dealing with default, to an ordinary mortgage foreclosure proceeding. Instead we should have applied the provisions of § 114 of the Mortgage Law of Puerto Rico. In the case of a mortgage, the law provides an additional security for interest accrued after maturity of the obligation, "an implied extension of the term of the contract," as termed by Roca Sastre, a sort of an implied mortgage, without a fixed period of duration, when there are

no third persons, and for the period of the part due of the current year and two additional years as maximum, when there are third persons. Roca Sastre says: · "Where no acts of alienation or encumbrance of the mortgaged property are performed after the mortgage is constituted, the first system prevails, *i. e.*, the mortgage security operates for the benefit of all interest unpaid and unprescribed. As long as there is not a third person who may be injured, says the statement of motives of the Act of 1861 [on which the law of Puerto Rico was patterned], the rule that *the mortgage secures all interest* has full force." (Italics and brackets ours.)

"This rule is sanctioned by § 114 of the Law, which only establishes the maximum interest secured by mortgage in order to avoid injury to a third person. Section 146 [our § 147] authorizes the mortgage foreclosure to recover all interest due, and only where an interested third person is involved does it bar foreclosure as respects interest exceeding the legal maximum . . . We believe that the credit interest secured by mortgage by operation of the law may be that accrued during the term of the contract of indebtedness as well as the interest accrued after maturity.

"La Rica does not think so, for he says that in the absence of a stipulation to the contrary, the security covers, to the prejudice of third persons, two years and that part of the current year which may have accrued, that is, three years, provided the term of the mortgage is equal to or exceeds three years, for if the term is shorter the only interest to be secured is the interest earned during the term of the contract.

"This opinion cannot prevail, because § 114 makes no distinction between one and the other since it refers to credit interest in general, *which includes both the interest accrued before maturity of the debt, and the interest accrued thereafter, for the latter accrues during a period of implied extension of the term of the contract.* Section 114 speaks of interest for the two years last past and that part of the current year which may have accrued; and therefore, since the interest due meets this requirement, *we need not determine whether it accrued during or after the term of the contract.* Otherwise, the law

would rather encourage the exercise of the foreclosure proceeding, rendering difficult to the debtor the relief afforded by the creditor's tolerance not to claim repayment of the loan, thereby impairing the territorial credit." Roca Sastre, 4 *Derecho Hipotecario* 335–38 (5th ed., 1954, by Casa Editorial Bosch). (Brackets ours.)

This was the rule followed by this Court in the *Altuna* case, *supra,* 1907. This has been the rule of the Supreme Court of Spain (see Judgments of October 17, 1932 and March 18, 1946).

Since the decision of the *Altuna* (1907) and *Goico* (1920) cases, several other cases have been decided following indistinctly the theory of either of the original cases, as if they could be applied without distinction. In *Figueroa et al* v. *Ramírez et al,* 36 P.R.R. 826, 828–29 (Del Toro) (1927), the application of § 114 of the Mortgage Law is correct. In *Caraballo* v. *Registrar,* 48 P.R.R. 902, 904 (Hutchison) (1935), the application of § 1061 of the Civil Code of Puerto Rico is incorrect. Reference is also made to the Judgment of June 7, 1922 of the Supreme Court of Spain—156 *Jur. Civ.* 464—which is evidently a case of judicial default —interest accruing after the filing of the complaint—involving a loan not secured by mortgage, where the same rule is incorrectly applied in the case of interest accrued after the maturity of the mortgage. In *Figueroa* v. *Boneta,* 58 P.R.R. 811, 816 (Del Toro) (1941), Mr. Justice Del Toro, who had held otherwise in the *Figueroa Rodríguez* v. *Ramírez* case, applying § 114 of the Mortgage Law, applies in the *Figueroa* v. *Boneta* case the sections dealing with default and the rulings of the *Goico* and *Caraballo* cases. That case was erroneously decided as respects the matter involved.

In 1946, in the decision in *Torres* v. *Fernández,* 65 P.R.R. 584, 589–594 (1946), Mr. Justice De Jesús made an extensive and excellent study of the matter and re-established the rule of the applicability of § 114 of the Mortgage Law to any question involving mortgage interest which had been

consecrated in the *Altuna* case (1907) as well as in the *Figueroa Rodríguez* case (1927).

Thereafter, other justices have followed indistinctly the rule in the *Figueroa* v. *Boneta* case (1941), according to which the sections dealing with default were applicable to mortgage interest accrued after maturity of the mortgage, and the rule in the *Torres* case (1946), according to which the special implied mortgage of § 114 of the Mortgage Law is applicable to mortgage interest, without realizing that there is an irreconcilable conflict between both rules as to the additional security of the interest after maturity of the mortgage. See, among others, *Arvelo* v. *Román*, 65 P.R.R. 699, 701 (*Córdova Díaz*) (1946), and *Buil* v. *Banco Popular*, 69 P.R.R. 237, 247 (*Marrero*) (1948). As a practical question, the only default conceivable within the mortgage foreclosure proceeding is the judicial default, *i. e.*, the default incurred after · the commencement of the proceeding (See Judgment of March 18, 1946 of the Supreme Court of Spain).

Summing up, §§ 1053, 1054, 1061, 1062, and 1127 of the Civil Code of Puerto Rico should not be construed in the sense that the debtor incurs default immediately upon maturity of a civil obligation, regarding which the Code does not provide otherwise, or the contracting parties have not stipulated otherwise.

The mere delay in the performance of an obligation is a legal situation different from "a special state of default." For mere delay to become a default, it is necessary to make demand on the debtor by the judicial or extrajudicial means available at law.

In the case of obligations secured by mortgage in which there is no stipulation as to a different rate of interest to accrue after the maturity of the obligation, the interest agreed upon to be paid before maturity continues after maturity and is secured by mortgage under § 114 of the Mortgage Law of Puerto Rico. Only in the event of injury to a third person will the mortgage liability after maturity be

limited to the interest for the current year and two additional years.

The afore-mentioned sections of the Civil Code of Puerto Rico relating to default do not apply to interest accrued on an obligation secured by mortgage, and, on the contrary, the applicable law is § 114 of the Mortgage Law of Puerto Rico.

The cases of *Goico* v. *Rodríguez, et al., supra; Santos* v. *Crédito y Ahorro Ponceño*, 41 P.R.R. 934; *Caraballo* v. *Registrar, supra; Vázquez* v. *Gutiérrez*, 52 P.R.R. 162; *Muñoz* v. *Nieves*, 53 P.R.R. 331; *Figueroa* v. *Boneta, supra; Arvelo* v. *Román, supra; Buil* v. *Banco Popular, supra; Vega* v. *García*, 61 P.R.R. 777, insofar as they hold that civil obligations, by the mere fact of maturity, earn default interest before demand is made on the debtor, and that the sections of the Civil Code dealing with default and not § 114 of the Mortgage Law of Puerto Rico govern the demand for interest accrued after maturity of the obligations secured by mortgage, should be expressly overruled.

In the case at bar, in which no right of a third person is involved, it is clear that all interest accrued was secured by mortgage and was includible in the mortgage foreclosure proceeding. Because of his failure to do so, the foreclosing creditor cannot at this time proceed to collect it in an independent civil action without being subject to the procedural rule of splitting of the cause of action. Section 148 of the Mortgage Law, invoked by plaintiff-appellant, does not apply to the juridical facts of this case. That section presupposes that the public auction of the mortgaged property has not covered all the amounts secured by mortgage, and, therefore, it authorizes the recovery of the unpaid amount by way of an independent ordinary action.

The judgment should be affirmed.